| | | |
|---|---|---|
| JEFFREY SEDLACEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| KERNERSVILLE CHRYSLER DODGE, | ) | **JURY TRIAL DEMANDED** |
| LLC. | ) | |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

1. Jeffrey Sedlacek ("Plaintiff" or "Jeff") enjoyed a long and successful career with Kernersville Chrysler Dodge, LLC ("Defendant" or the "Company"). Jeff gave his all to the Company. The Company rewarded him by illegally firing him.

2. When the Company fired Jeff in August 2022, General Sales Manager Blake Mitchell told him his termination had nothing to do with his performance. Mitchell then revealed his bias by telling Jeff that this termination was not a big deal, stating, "you're going to retire in two or three years anyway, right?" Jeff was 58-years-old at the time and had recently taken disability leave from work for a back issue. This wasn't the first time one of Jeff's superiors raised Jeff's retirement with him. But Jeff wanted to work and wasn't planning on retiring anytime soon.

3. Plaintiff now turns to this Court to be made whole for his harms and losses. Plaintiff brings this action against Defendant for violations of the Age Discrimination in Employment Act (Count I), the Americans with Disabilities Act (Count II), Wrongful Discharge in

1

violation of North Carolina Public Policy (Count III), and Family and Medical Leave Act (Count IV).

## II. PARTIES, JURISDICTION AND VENUE

4. Plaintiff resides in Stokes County, North Carolina.

5. Kernersville Chrysler Dodge, LLC is a North Carolina corporation, with its principal office located at 950 NC-66 South, Kernersville, NC 27284-3133.

6. Defendant's registered agent is Timothy M. Mitchell, located at the same address.

7. Venue is proper in the Middle District of North Carolina because: Defendant has a substantial presence in Forsyth County, North Carolina and conducts a great deal of business there. At all relevant times, Plaintiff worked out of the 950 NC-66 South Kernersville, NC 27284-3133 location. Moreover, the facts and circumstances of the case arise in Forsyth County, North Carolina. But for Defendant's illegal conduct, Plaintiff would have continued working in Forsyth County, North Carolina.

## III. FACTUAL STATEMENT

8. Jeff began working for the Company in the late 1990s. With the exception of a stretch in the 2000s, Jeff enjoyed a long career with the Company. His tenure with the Company was incredibly successful. He rose through the ranks to become a Sales Manager, earning a percentage of the Company's gross sales as part of his compensation package.

9. On or around January 18, 2022, Jeff went out on disability leave for a cervical fusion surgery to treat his disability, Degenerative Disc Disease. While his disability leave could have lasted longer, Jeff returned early in Mid-March 2022.

10. Jeff knew General Manager Blake Mitchell did not like employees taking time off of

2

work. Jeff could have continued his leave as his doctors recommended, but he feared for his job security and came back early.

11. Just two months later,[1] Mitchell decided to fire Jeff. When asked to explain himself before the Equal Employment Opportunity Commission ("EEOC"), Mitchell highlighted Jeff's disability leave just before stating that he, April Clay, and Chase Lee decided to "eliminate Jeff's position . . . once we deem the market dictates a cutback in staff." Then, Mitchell promoted a junior employee named Reid Lippard into Jeff's role as Used Car Manager, shortly thereafter contradicting the "job elimination" and "cutback" explanations.

12. On March 12, 2022, Jeff turned 58 years old.

13. On or around August 3, 2022, Jeff met with Mitchell and General Sales Manager April Clay. Mitchell began the meeting and told Jeff, effective August 31, 2022, he would no longer have a position with the Company.

14. Mitchell said the termination had nothing to do with Jeff's job performance. He even went so far as to say Jeff was the most loyal employee he ever had.

15. Mitchell added, "You've made pretty good money the past few years, and I am sure you saved some. You're going to retire in two or three years anyway, right?"

16. Jeff had no intention of retiring any time soon, and he had repeatedly made that clear to the Company.

17. Following his termination, Jeff met with Clay to discuss the firing. He told her he felt it was wrong, unfair, and age discrimination. Clay said she did not believe Jeff had been a bad employee at any point. Jeff asked her what his retirement had to do with anything,

---

[1] Mitchell made this admission to the Equal Employment Opportunity Commission, but Jeff did not know until August 2022.

3

referencing Mitchell's comments at the end of their meeting. Clay said she had no idea why Mitchell had mentioned that. Clay said she would not have chosen Jeff for termination—further contradicting Defendant's claim that Clay made the decision to eliminate Jeff's position.

18. The August 3 meeting had not been the first time Mitchell raised retirement to Jeff. In fact, he frequently brought up the topic and would make jokes about sending Jeff on a "retirement trip." Mitchell also frequently asked when Jeff's wife would retire.

19. Mitchell's unprompted retirement comments evidence age bias.

20. Jeff's suspicions that illegal age discrimination was the reason for his termination were further confirmed in a conversation with Used Car Manager Chase Lee. On or around August 10, 2022, Jeff confided in Lee that he believed his age factored into the Company's decision to fire him. Lee responded by saying "Yes, I know. [Blake Mitchell] had made reference that the car business had passed you by."

21. By no objective measure had the car business passed Jeff by.

22. Jeff continued to work through the remainder of the month following his termination. During that time, Mitchell would neither look nor speak to Jeff. During Jeff's final days of employment, Mitchell finally spoke to him. He asked Jeff if his wife had retired yet. Jeff responded that she had retired, but, because of the termination, she would have to come out of retirement. This ended up being the case. Mitchell was visibly upset at Jeff's response.

23. At the time of his termination, Jeff's peers were Chase Lee (mid-30s), Jerry Bono (40s), Michael Moore (40s) and Jesse Perez (40s). Jeff was substantially older than these peers.

4

24. The Company replaced Jeff with Reid Lippard, who was under 30-years-old at the time of Jeff's termination—further contradicting the Company's claim to have "eliminate[d]" Jeff's position because the market dictated a "cutback in staff."

25. Mitchell refers to Lippard as "the new hire" and admits that he was brought onto the manager pay plan as soon as Jeff left the building on his last day.

26. The Company now claims performance was actually the reason it chose Jeff's position as the one to be eliminated despite Mitchell's statement to the contrary. It also falsely asserted that "once Sedlacek left the Company, the position was eliminated and Sedlacek's job responsibilities absorbed by those already in the department's manager positions." To the contrary, Mitchell admitted that he promoted "new hire" Reid Lippard onto the manager's pay plan moments after Jeff walked out the door for the final time. Lippard has also assumed Jeff's responsibilities in addition to his pay.

27. Lippard was a Used Car Buyer before he replaced Jeff, and the Company hired a new Used Car Buyer named Brandon Johnson (who was also significantly younger than Jeff) to replace Lippard.

28. Moreover, earlier in 2022, the Company fired one of Jeff's former peers, Benjamin Brasington, who was roughly the same age as Jeff. The Company also brought up retirement with Mr. Brasington and replaced him with a significantly younger employee named Greg Lee.

29. In August 2022, Defendant told Plaintiff it was going to pay him $10,000 in severance and vacation pay. It did not ask or require Plaintiff to sign any release whatsoever to receive this payout. However, when Plaintiff asserted ADEA, FMLA, and ADA

5

discrimination claims through counsel, Defendant rescinded its offer.

30. On December 14, 2022, Jeff filed a charge of discrimination with the EEOC through counsel.

31. On June 15, 2023, the EEOC issued Jeff his Notice of Right to Sue letter.

### IV. LEGAL CLAIMS

### Count I
#### (*Violation of the Age Discrimination in Employment Act*)

32. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

33. Plaintiff is, and at all relevant times was, an employee covered by the protections of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et. seq. ("ADEA").

34. Defendant employed at least 20 employees and was engaged in commerce at all relevant times.

35. Plaintiff was a 58-year old employee at the time of his termination.

36. Plaintiff was qualified for his position at all relevant times. Defendant treated Plaintiff disparately in relation to his similarly situated peers that were under the age of 40 and/or significantly younger than Plaintiff.

37. Defendant's explanation for Plaintiff's termination amounts to pretext for unlawful age discrimination.

38. Defendant otherwise exhibited age bias by, but not limited to, explicitly seeking to employ a younger workforce, systematically terminating older employees, and ultimately terminating Plaintiff and other older workers.

6

39. Defendant decided to terminate Plaintiff's employment on the basis of his age in violation of the ADEA.

40. Defendant also engaged in a pattern or practice of age discrimination which resulted in Plaintiff's termination, which also violated the ADEA.

41. Defendant also violated the ADEA when it rescinded its severance offer in retaliation for asserting ADEA claims.

42. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, and other consequential damages.

43. Defendant's actions were done willfully, and in a manner that demonstrates reckless disregard for Plaintiff's rights under the ADEA. As a result of Defendant's conduct, Plaintiff is entitled to recover liquidated damages.

## Count II
### (*Violation of the Americans with Disabilities Act*)

44. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

45. Plaintiff was disabled in that he had physical impairments that substantially limited one or more major life activities, including, but not limited to, his ability to work and perform physically enduring tasks for a certain period of time. Plaintiff's condition limited the following major life activities and/or bodily functions, including but not limited to: lifting and working.

46. Defendant otherwise regarded Plaintiff as disabled at the time of his termination.

47. Plaintiff requested a reasonable accommodation (leave of absence related to

7

disability).

48. Plaintiff suffered an adverse employment action when Defendant terminated his employment on the basis of his real or perceived disabilities and/or in retaliation for receiving or requesting a reasonable accommodation (medical leave).

49. Defendant also violated the ADA when it rescinded its severance offer in retaliation for asserting ADA claims.

50. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind has been disturbed.

51. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

### **Count III**
(***Wrongful Discharge in Violation of North Carolina Public Policy***)

52. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

53. Plaintiff was an at-will employee of Defendant.

54. Defendant employed at least fifteen (15) employees at all relevant times.

55. The public policy of North Carolina, codified in the North Carolina Equal

Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a) seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of age or disability ("handicap").

56. Defendant violated the public policy of North Carolina by terminating Plaintiff because Defendant regarded Plaintiff as having a physical or mental impairment which substantially limits one or more major life activities.

57. Plaintiff qualified as an individual with a disability in that he was actually disabled/ handicapped and was perceived as such.

58. Defendant violated North Carolina public policy by terminating Plaintiff because of his age, and actual or perceived disability and/or handicap.

59. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in his earning capacity, emotional distress, damage to his reputation, anxiety, depression, embarrassment, humiliation, and his peace of mind has been disturbed.

60. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## Count IV
### (*Violation of the Family and Medical Leave Act*)

61. The allegations contained in the foregoing paragraphs are incorporated by reference

herein.

62. Plaintiff required leave protected under the Family and Medical Leave Act because of his own serious health condition. Plaintiff was employed by Defendant for 12 months and worked at least 1,250 hours during the 12 months prior to the start of his requested leave. Defendant employ 50 or more employees within a 75-mile radius pursuant to 29 C.F.R. §825.111.

63. Plaintiff engaged in protected activity by requesting FMLA leave, by otherwise alerting Defendant to his need to take time off because of his own serious health condition, and by actually taking such time off. Defendant took an action that a reasonable employee would have found materially adverse when it terminated Plaintiff's employment. There exists a causal connection between Plaintiff's protected activity and Defendant's adverse action.

64. Defendant violated the FMLA when it terminated Plaintiff's employment because of his time off for his own serious health condition.

65. Defendant violated the FMLA when it rescinded Plaintiff's severance in retaliation for his raising FMLA violations.

66. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, and costs.

67. Defendant's actions were not in good faith. Nor did Defendant have objectively reasonable grounds to believe it was not violating the FMLA. Defendant's actions were done willfully and in a manner that demonstrates a reckless disregard for Plaintiff's rights under the FMLA. As a result of Defendant's conduct, Plaintiff is entitled to recover liquidated damages.

**JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment again Defendant and order the Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.* and the Americans with Disabilities Act;

3. Award Plaintiff liquidated damages under 29 U.S.C. § 626(b);

4. Award Plaintiff liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii);

5. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

6. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

7. Grant Plaintiff a trial of this matter by a jury.

This the 2nd day of August, 2023.

*/s/ Sean F. Herrmann*
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Avenue Ste. 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com
*Attorneys for Plaintiff*

11